**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHROME HEARTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-04536 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Chrome Hearts LLC ("Plaintiff" or "Chrome Hearts") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.  JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores").  Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Chrome Hearts' trademarks.  Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Chrome Hearts' federally registered trademarks to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Chrome Hearts substantial injury in the State of Illinois.

## II.   INTRODUCTION

3.     This action has been filed by Chrome Hearts to combat online counterfeiters who trade upon Chrome Hearts' reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products using counterfeit versions of Chrome Hearts' federally registered trademarks (the "Counterfeit Chrome Hearts Products").  Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Chrome Hearts products, while actually selling Counterfeit Chrome Hearts Products to unknowing consumers.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Chrome Hearts Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Chrome Hearts is forced to file these actions to

2

combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Chrome Hearts Products over the Internet. Chrome Hearts has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III.   THE PARTIES

**Plaintiff**

4.     Plaintiff Chrome Hearts is a limited liability company organized and existing under the laws of the State of Delaware, with an office and principal place of business at 915 North Mansfield Avenue, Hollywood, California 90038.

5.     Chrome Hearts is an American luxury brand that has been designing, manufacturing, and selling artistically styled leather goods, apparel, jewelry, accessories, home goods and furniture since 1989. Chrome Hearts is known around the world for its unique rocker-chic jewelry, leather clothing, executive gadgets, striking hand-crafted wood furniture, and top-of-the-line sunglasses (collectively, the "Chrome Hearts Products").

6.     Chrome Hearts pioneered the idea of combining the look of rugged apparel with fashion attire to make highly desired fashion apparel and accessories.

7.     Notable clients of Chrome Hearts Products include a wide diversity of entertainers and celebrities that range from the Sex Pistols' Steve Jones to Lee Ann Rimes, Britney Spears, Julia Roberts, Cher, Billy Idol, Aerosmith, Lenny Kravitz, Guns N' Roses, Seal, Madonna, Keith Richards, Danny Glover, Sting, Gloria Estefan, Christy Turlington, Naomi Campbell and Sharon Stone. Chrome Hearts Products are sold in exclusive Chrome Hearts stores throughout the world

3

and in select specialty stores around the world and in Illinois, including Eyelines in Chicago, North Shore Optical in Winnetka, Eye Magic in Highland Park, and All About Eyes in Bloomington.

8.     In 1993, the Council of Fashion Designers of America ("CFDA") presented Chrome Hearts with an unsolicited award as designer of the year for its innovative accessories and jewelry designs.  In 1999, Chrome Hearts was featured in the "Rock Style" exhibit at the Costume Institute of the Metropolitan Museum of Art.

9.     Chrome Hearts Products have been praised and recognized by numerous trade publications, as well as publications directed to the general public, including articles in the United States, Germany, Japan and France.  These articles have acclaimed the high artistry, fashion, style and uniqueness of Chrome Hearts' designs.

10.     Chrome Hearts advertises throughout the world in select high end and artistic magazines.  In addition, Chrome Hearts works with fashion and art magazines to feature editorial articles on Chrome Hearts Products.

11.     Virtually all Chrome Hearts Products, including clothing, denim and jewelry are handmade in Los Angeles by Chrome Hearts' craftsmen.  The level of expert workmanship exercised by these individuals is superior and conforms to the strict standards established by Chrome Hearts.

12.     The Chrome Hearts brand is a multi-million dollar brand, and Chrome Hearts spends considerable resources marketing and protecting it.

13.     Chrome Hearts is the owner of the trademark CHROME HEARTS and various composite trademarks comprising the CHROME HEARTS house mark and assorted design components (collectively, the "CHROME HEARTS Trademarks").  Chrome Hearts has continuously sold Chrome Hearts Products under the CHROME HEARTS house mark since at

4

least as early as 1989.  As a result of its long-standing use, Chrome Hearts owns common law trademark rights in its CHROME HEARTS Trademarks.  Chrome Hearts has built substantial goodwill in and to the CHROME HEARTS Trademarks.  The CHROME HEARTS Trademarks are famous and valuable assets of Chrome Hearts.

14.    In addition to common law trademark rights, Chrome Hearts has registered several of its CHROME HEARTS Trademarks with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,665,791 | CHROME HEARTS | For: jewelry, belt buckles made of precious metal, key rings made of precious metal, cufflinks, tie fasteners made of precious metal, brooches, necklaces and earrings in class 014; For: garment bags for travel, tote bags, shoulder bags, purses and luggage in class 018; For: clothing; namely, shirts, trousers, jackets, vests, chaps, men's and women's underwear, coats, clothing belts, gloves and boots in class 025; For: belt buckles not of precious metal and tie fasteners not of precious metal in class 026. |
| 2,118,026 | CHROME HEARTS | For: leather bags, namely, handbags, back packs, tote bags, shoulder bags, wallets and luggage in class 018; For: men's and women's clothing, namely, pants, shirts, tee shirts, sweaters, jackets, vests, chaps, skirts, belts, underwear, gloves, shoes and boots in class 025. |
| 2,192,539 | CHROME HEARTS | For: retail store services in the field of general merchandise in class 042. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 2,214,641 |  | For: clothing, namely, shirts, tee shirts, pants, jeans, leather jackets, leather vests, leather pants, chaps, coats, gloves, men's and women's underwear, clothing belt and footwear; namely, boots in class 025. |
| 2,214,642 |  | For: bags; namely, shoulder bags, wallets, tote bags, handbags, garment bags and luggage in class 018. |
| 2,216,570 |  | For: jewelry made wholly or in part of precious metal; namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners in class 014. |
| 2,216,575 |  | For: clothing; namely, tee shirts, shirts, tank tops, pants, chaps, jeans, sweaters and jackets in class 025. |
| 2,284,625 |  | For: jewelry made wholly or in part of precious metals; namely, bracelets, necklaces, rings, pendants, earrings, key rings, brooches, lapel pins, cuff links, watches and belt buckles made wholly or in part of precious metals in class 014. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 2,307,126 |  | For: jewelry made wholly or in part of precious metal, namely, rings, earrings, necklaces, bracelets, cuff links, key rings, belt buckles, watches and tie fasteners in class 014. |
| 2,350,742 |  | For: eyewear; namely, eyeglasses, sunglasses and their cases in class 009. |
| 2,375,507 |  | For: bags; namely, handbags, shoulder bags, backpacks, tote bags, wallets and luggage in class 018. |
| 2,408,082 |  | For: men's and women's clothing; namely, jeans, leather pants, skirts, jackets, chaps, sweaters, vests tee-shirts and shirts in class 025. |
| 2,538,565 |  | For: eyewear; namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 2,954,539 |  | For: jewelry, namely, bracelets, necklaces, rings, earrings, pendants, cuff links and watch bracelets in class 014. |
| 3,061,598 |  | For: retail store services in the field of general merchandise in class 035. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,267,866 |  | For: clothing, namely, tee shirts, shirts, jackets, tank tops, sweaters, hats and sweatshirts in class 025. |
| 3,365,408 |  | For: retail store services in the field of jewelry, clothing, handbags, eyewear, home furnishings, bed linen, and toys in class 035. |
| 3,385,415 |  | For: jewelry, namely, bracelets, necklaces, key rings made of precious metals, rings, pendants, watch bracelets in class 014. |
| 3,385,416 |  | For: clothing, namely, tee shirts, shirts, sweaters, tank tops, sweatshirts, hats and pants in class 025. |
| 3,385,439 |  | For: clothing, namely, tee shirts, shirts, sweatshirts and hats in class 025. |
| 3,385,449 |  | For jewelry, namely, bracelets, rings, watch bands, necklaces, and lighters made of precious metals in class 014. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,388,911 |  | For clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweat pants, sweaters, and hats in class 025. |
| 3,388,912 |  | For: clothing, namely, tee shirts, shirts, sweatshirts, tank tops and hats in class 025. |
| 3,388,913 |  | For: clothing, namely, tee shirts, shirts, tank tops and sweatshirts in class 025. |
| 3,388,920 |  | For: clothing, namely, tee shirts, shirts, sweatshirts, jackets and pants in class 025. |
| 3,605,854 |  | For: bags, namely, handbags, shoulder bags, clutches, tote bags, wallets, back packs and luggage in class 018. |
| 3,605,860 |  | For: jewelry, namely, rings, earrings, pendants, necklaces, bracelets, cuff bracelets, cuff links, watch bracelets and key rings made of precious metals in class 014. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,605,968 |  | For: men's and women's clothing, namely, pants, jeans and chaps in class 025. |
| 3,606,059 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, pants, jackets, coats and hats in class 025. |
| 3,637,806 |  | For: bags, namely, handbags, shoulder bags, back packs, messenger bags, clutches, wallets and luggage in class 018. |
| 3,657,370 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets, garment bags and luggage in class 018. |
| 3,657,375 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets, garment bags and luggage in class 018. |
| 3,658,047 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets and luggage in class 018. |
| 3,728,356 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,728,357 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,728,359 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,731,397 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,731,400 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,731,401 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,731,402 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,731,403 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,743,975 |  | For: bags, namely, handbags, shoulder bags, back packs, tote bags, wallets and luggage in class 018. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,770,379 |  | For: eyewear; namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,784,392 |  | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 3,828,365 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, sweaters, jackets, lingerie and hats in class 025. |
| 3,831,922 |  | For: bags, namely, hand bags, shoulder bags, messenger bags, back packs, duffle bags, clutches, evening bags, wallets and luggage in class 018. |
| 3,873,570 |  | For: belt buckles for clothing in class 026. |
| 3,873,571 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, vests, jackets, coats, pants, jeans and hats in class 025. |
| 3,877,137 |  | For: clothing; namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, leather pants, coats, jackets, hats, socks, underwear and footwear in class 025. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 3,882,533 |  | For: jewelry, namely, rings, earrings, pendants, necklaces, bracelets, dog tags for wear by humans for decorative purposes, and cuff links in class 014. |
| 3,894,026 |  | For: jewelry, namely, rings, earrings, pendants, cuff bracelets, bracelets, necklaces, cuff links, watch bracelets, brooches and dog tags for wear by humans for decorative purposes in class 014. |
| 3,937,133 |  | For: jewelry; namely, rings, earrings, necklaces, bracelets, pendants, cuff links, dog tags for wear by humans for decorative purposes and watch bracelets in class 014. |
| 4,439,515 |  | For: jewelry, namely, rings, earrings, bracelets, necklaces, pendants, cuff links, cuff bracelets, key rings made of precious metals and watch bracelets in class 014. |
| 4,494,781 |  | For: bags, namely, shoulder bags, handbags, messenger bags, back packs, clutches, evening bags, wallets, duffel bags, luggage in class 018. |
| 4,494,782 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, tie fasteners, cuff links, watch bracelets in class 014. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,494,838 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, tie fasteners, brooches, pendants, cuff links, key rings made of precious metals and watch bracelets in class 014. |
| 4,494,841 |  | For: jewelry, namely, rings, earring, necklaces, bracelets, cuff bracelets, brooches, pendants, cuff links, key rings made of precious metals tie fasteners and watch bracelets in class 014. |
| 4,494,842 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, pendants, cuff links, key rings made of precious metals, tie fasteners and watch bracelets in class 014. |
| 4,494,843 |  | For: clothing, namely, shirts, tee shirts, tank tops, sweaters, sweat shirts, sweat pants, dresses, skirts, jackets, coats, jeans, vests, leather pants, chaps, swimwear, underwear, hats and footwear in class 025. |
| 4,494,945 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, vests, dresses, skirts, jackets, coats, jeans leather pants, chaps, undergarments, swimwear, hats and footwear in class 025. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,494,946 |  | For: jewelry, namely, rings, earrings, bracelets, necklaces, cuff bracelets, cuff links, brooches, pendants, key rings made of precious metals, tie fasteners and watch bracelets in class 014. |
| 4,497,539 |  | For: eyewear, namely, sunglasses, eyeglasses and their cases in class 009. |
| 4,497,576 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, jeans, leather pants, chaps, skirts, dresses, vests, jackets, coats, swimwear, underwear, hats and footwear in class 025. |
| 4,501,509 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, vests, sweaters, sweat pants, jeans, leather pants, chaps, skirts, dresses, jackets coats, swimwear, hats, undergarments and foot wear in class 025. |
| 4,501,511 | CHROME HEARTS | For: retail store services in the fields of general merchandise, namely, clothing, jewelry, handbags, eyewear, toys, furniture and household products in class 035. |
| 4,501,775 |  | For: retail store services in the field of general merchandise, namely, clothing, clothing accessories, jewelry, handbags, fragrances, personal leather goods, luggage, toys, and smoking articles in class 035. |

15

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,504,948 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, pendants, brooches, cuff links, tie fasteners, key rings made of precious metals and watch bracelets in class 014. |
| 4,510,020 |  | For: jewelry, namely, rings, earrings, necklaces, bracelets, cuff bracelets, brooches, cuff links, key rings, watch bracelets and tie fasteners in class 014. |
| 4,510,021 |  | For: clothing, namely, shirts, tee shirts, tank tops, sweaters, vests, sweat shirts, sweat pants, jeans, leather pants, chaps, skirts, jackets, dresses, undergarments, hats, swimwear and footwear in class 025. |
| 4,510,022 |  | For: bags, namely, handbags, shoulder bags, messenger bags, clutches, evening bags, tote bags, duffel bags, wallets and luggage in class 018. |
| 4,510,024 |  | For: clothing, namely, tee shirts, shirts, tank tops, sweaters, sweat shirts, sweat pants, vests, jackets, jeans, leather pants, dresses, skirts, swimwear, undergarments, hats and footwear in class 025. |
| 4,510,061 |  | For: jewelry, namely, earrings, rings, bracelets, cuff bracelets, necklaces, pendants, brooches, cuff links, tie fasteners and watch bracelets, key rings of precious metals in class 014. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,616,169 | | For: eyewear, namely, eyeglasses, sunglasses, eyeglass cases and sunglass cases in class 009. |
| 4,619,672 | | For: jewelry, namely, rings, earrings, bracelets, necklaces, pendants, cuff links, cuff bracelets, tie fasteners, key rings made of precious metals, watch bracelets and brooches in class 014. |
| 4,619,673 | | For: bags, namely, handbags, shoulder bags, back packs, messenger bags, clutches, duffle bags, evening bags, wallets and luggage in class 018. |
| 4,619,674 | | For: clothing, namely, tee shirts, shirts, tank tops, sweat shirts, sweat pants, vests, sweaters, jeans, pants, chaps, dresses, skirts, jackets, coats, underwear, swimwear, hats, socks and footwear in class 025. |
| 4,619,675 | | For: Smoking articles, namely, cigarette lighters, cases and holders not of precious metals, tobacco pouches, cigar cutters and humidors in class 034. |
| 4,643,872 | | For: bags, namely, shoulder bags, wallets, tote bags, handbags, evening bags, clutches, messenger bags, back packs, duffle bags, garment bags for travel and luggage in class 018. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,643,894 |  | For: eyewear, namely, eyeglasses and sunglasses; component parts for all of the aforesaid goods; and cases for eyeglasses and sunglasses in class 009. |
| 4,658,582 |  | For: phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases in class 009. |
| 4,648,016 |  | For: phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases in class 009. |
| 4,783,129 |  | For: paper goods, namely, post cards, stationery, tissue paper, gift boxes and printed matter, namely, magazines featuring information about fashion in class 016. |
| 4,809,639 |  | For: paper goods, namely, post cards, stationery, tissue paper, gift boxes and printed matter, namely, magazines featuring information about fashion in class 016. |
| 5,186,592 |  | For: eyewear, namely, eyeglasses, sunglasses, their parts and cases; phone accessories, namely, phone straps, pouches specially adapted for holding phones, phone cases, charms for phones, tablet cases and laptop cases; pre-recorded CDs and DVDs in the field of music in class 009. |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 5,186,624 |  | For: belt buckles; belt buckles for clothing; zipper pulls; clothing accessories, namely, charms for attachment to zipper pulls and buttons in class 026. |
| 5,186,676 | CHROME HEARTS | For: incense holders in the nature of incense burners in class 021. |

15.     The above U.S. registrations for the CHROME HEARTS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the CHROME HEARTS Trademarks constitute *prima facie* evidence of their validity and of Chrome Hearts' exclusive right to use the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1057(b).  True and correct copies of the United States Registration Certificates for the above-listed CHROME HEARTS Trademarks are attached hereto as **Exhibit 1**.

16.     One of Chrome Hearts' most iconic and well-recognized trademarks is the "CH Plus Mark" , federal trademark registrations for which include, but are not limited to, U.S. Reg. No. 3,388,911 (for clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweat pants, sweaters, and hats), U.S. Reg. No. 3,365,408 (for retail store services in the field of jewelry, clothing, handbags, eyewear, home furnishings, bed linen, and toys), and U.S. Reg. No. 3,385,449 (for jewelry, namely, bracelets, rings, watch bands, necklaces, and lighters made of precious metals).

17.     Chrome Hearts is also the owner of a federal copyright registration for the CH Plus Mark (U.S. Copyright Reg. No. VA 705-233), a true and correct copy of which is attached hereto

as **Exhibit 2**.  Through longstanding use, advertising, and registration, the CH Plus Mark has achieved a high degree of consumer recognition and constitutes a famous mark.

18.     Chrome Hearts has continuously used the CHROME HEARTS Trademarks, including the CH Plus Mark, in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Chrome Hearts Products since their respective dates of first use as noted on the federal trademark registration certificates.

19.     The CHROME HEARTS Trademarks identify, in the United States and throughout the world, high quality leather fashions, jewelry and accessories designed and manufactured by Chrome Hearts.

20.     Due to Chrome Hearts' longstanding use of its marks, extensive sales, and significant advertising and promotional activities, the CHROME HEARTS Trademarks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States, including in Illinois and this Judicial District.

21.     The CHROME HEARTS Trademarks are inherently distinctive when applied to the Chrome Hearts Products, signifying to the purchaser that the products come from Chrome Hearts and are manufactured to Chrome Hearts' exacting quality standards.  Whether Chrome Hearts manufactures the products itself or licenses others to do so, Chrome Hearts has ensured that products bearing its trademarks are manufactured to the highest quality standards.  Chrome Hearts Products branded under the CHROME HEARTS Trademarks have been widely accepted by the public and are enormously popular.  In view of this popularity, the CHROME HEARTS Trademarks are famous marks.

**The Defendants**

22.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Chrome Hearts Products to consumers within the United States, including the State of Illinois.

23.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the CHROME HEARTS Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Chrome Hearts to learn Defendants' true identities and the exact interworking of their counterfeit network.  In the event that Defendants provide additional credible information regarding their identities, Chrome Hearts will take appropriate steps to amend the Complaint.

## IV.  DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of the Chrome Hearts brand has resulted in its significant counterfeiting.  Consequently, Chrome Hearts has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Chrome Hearts has identified thousands of domain names linked to fully interactive websites and marketplace listings on

21

platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Chrome Hearts Products to consumers in this Judicial District and throughout the United States. Despite Chrome Hearts' enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

25. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the CHROME HEARTS Trademarks into the URL. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Chrome Hearts has not licensed or authorized Defendants to use any of its CHROME HEARTS Trademarks, and none of the Defendants are authorized retailers of genuine Chrome Hearts Products.

26. Many Defendants also deceive unknowing consumers by using the CHROME HEARTS Trademarks without authorization within the content, text, and/or meta tags of their

websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Chrome Hearts Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Chrome Hearts Products. Other Defendants only show the CHROME HEARTS Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Chrome Hearts Products.

27. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

28. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Chrome Hearts Products for sale in the

23

Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Chrome Hearts Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services and similar name servers.

29.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

30.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Chrome Hearts' enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move

funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

31.     Defendants, without any authorization or license from Chrome Hearts, have knowingly and willfully used and continue to use the CHROME HEARTS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Chrome Hearts Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Chrome Hearts Products into the United States, including Illinois.

32.     Defendants' use of the CHROME HEARTS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Chrome Hearts Products, including the sale of Counterfeit Chrome Hearts Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Chrome Hearts.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33.     Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CHROME HEARTS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CHROME HEARTS Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Chrome Hearts Products offered, sold or marketed under the CHROME HEARTS Trademarks.

35. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CHROME HEARTS Trademarks without Chrome Hearts' permission.

36. Chrome Hearts is the exclusive owner of the CHROME HEARTS Trademarks. Chrome Hearts' United States Registrations for the CHROME HEARTS Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Chrome Hearts' rights in the CHROME HEARTS Trademarks, and are willfully infringing and intentionally using counterfeits of the CHROME HEARTS Trademarks. Defendants' willful, intentional and unauthorized use of the CHROME HEARTS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Chrome Hearts Products among the general public.

37. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Chrome Hearts has no adequate remedy at law, and if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CHROME HEARTS Trademarks.

39. The injuries and damages sustained by Chrome Hearts have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Chrome Hearts Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Chrome Hearts Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Chrome Hearts or the origin, sponsorship, or approval of Defendants' Counterfeit Chrome Hearts Products by Chrome Hearts.

42.     By using the CHROME HEARTS Trademarks on the Counterfeit Chrome Hearts Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Chrome Hearts Products.

43.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Chrome Hearts Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44.     Chrome Hearts has no adequate remedy at law and, if Defendants' actions are not enjoined, Chrome Hearts will continue to suffer irreparable harm to its reputation and the goodwill of its Chrome Hearts brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE CHROME HEARTS TRADEMARKS**

45.     Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 44.

46.     Chrome Hearts is the exclusive owner of the CHROME HEARTS Trademarks. The U.S. Registrations for the CHROME HEARTS Trademarks (Exhibit 1) are in full force and effect.  Additionally, the CHROME HEARTS Trademarks are highly distinctive and famous

marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

47.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the CHROME HEARTS Trademarks have acted with bad faith intent to profit from the unauthorized use of the CHROME HEARTS Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the CHROME HEARTS Trademarks.

48.     Defendants have no intellectual property rights in or to the CHROME HEARTS Trademarks.

49.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

50.     Chrome Hearts has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the CHROME HEARTS Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Chrome Hearts.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

51.     Chrome Hearts hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 50.

52.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Chrome Hearts Products as those of Chrome Hearts; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association

with genuine Chrome Hearts Products; representing that their Counterfeit Chrome Hearts Products have Chrome Hearts' approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

53. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

54. Chrome Hearts has no adequate remedy at law, and Defendants' conduct has caused Chrome Hearts to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Chrome Hearts will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Chrome Hearts prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CHROME HEARTS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Chrome Hearts Product or is not authorized by Chrome Hearts to be sold in connection with the CHROME HEARTS Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Chrome Hearts Product or any other product produced by Chrome Hearts that is not Chrome Hearts' or not produced under the authorization, control, or supervision of

Chrome Hearts and approved by Chrome Hearts for sale under the CHROME HEARTS Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Chrome Hearts Products are those sold under the authorization, control, or supervision of Chrome Hearts, or are sponsored by, approved by, or otherwise connected with Chrome Hearts;

d. further infringing the CHROME HEARTS Trademarks and damaging Chrome Hearts' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Chrome Hearts, nor authorized by Chrome Hearts to be sold or offered for sale, and which bear any of Chrome Hearts' trademarks, including the CHROME HEARTS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Chrome Hearts' choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Chrome Hearts, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Chrome Hearts' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap") shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Chrome

Hearts' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Chrome Hearts' request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the CHROME HEARTS Trademarks;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CHROME HEARTS Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Chrome Hearts all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CHROME HEARTS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Chrome Hearts be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the

CHROME HEARTS Trademarks and $100,000 per domain name incorporating any of the CHROME HEARTS Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Chrome Hearts be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 16th day of June 2017.          Respectfully submitted,

<div style="margin-left: 40%;">

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Chrome Hearts LLC*

</div>